ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

CHRISTIAAN H. HIGHSMITH (CABN 296282)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7200
   FAX: (415) 436-7234
   christiaan.highsmith@usdoj.gov

Attorneys for United States of America

**FILED**

Apr 26 2023

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 21-CR-395 MMC |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE** |
| v. | |
| AYEGBA MELIGA, | Sentencing Date: May 3, 2023 |
| Defendant. | Time: 2:15 p.m.<br>Court: Hon. Maxine M. Chesney |

Defendant Ayegba Meliga is scheduled to be sentenced on May 3, 2023. He pleaded guilty on October 20, 2021, to both counts in a two-count Information, which charged him with money laundering (Count One) and making a false statement to the Small Business Administration (SBA) (Count Two).

In anticipation of the sentencing hearing, the United States files this Memorandum to address the offense conduct and the calculation of the Guidelines, as well as to advise the Court of its sentencing recommendation. For the reasons set forth herein and in a separate, contemporaneous filing, the United States requests that the Court depart downward and sentence Meliga to a term of imprisonment of 12 months and 1 day. The Court should also order that Meliga be placed on supervised release for three

USA'S MEM. IN FURTHER SUPPORT
OF MTN. FOR DOWNWARD DEPARTURE
[UNDER SEAL]
21-CR-395 MMC

years.  The United States does not recommend a fine, but the Court should order that Meliga pay restitution to (1) Intuit of $22,700, and (2) the SBA of $149,900.  Per the plea agreement, the Court should enter a forfeiture money judgment of $172,600 at the time of sentencing pursuant to a Final Order of Forfeiture.  Finally, the Court should order Meliga to pay the $200 special assessment at the time of sentencing.

**I.     Offense Conduct**

A summary of the facts of this case are set out in the PSR and in the Plea Agreement.  *See* PSR, ¶¶ 6-49; Plea Agrm., ¶ 2.

*1.   Money Laundering Related to Intuit Fraud Scheme*

In July 2019, Meliga conducted several financial transactions with money he knew was derived from criminal activity, specifically, a wire fraud scheme.  Meliga did not know the details of the broader scheme, which targeted Intuit's Quickbook's software program for small and medium-sized businesses.  Prior to July 2019, perpetrators of the scheme set up Quickbooks' Merchant Services Accounts ("MSAs")—specialized accounts that enable merchants to process credit card transactions—using fake or stolen identification information.  Perpetrators used stolen credit card information to charge those stolen credit cards for services purportedly provided by the company associated with the fake MSAs.  The MSAs charged the credit cards and immediately transferred the credit card payments to the bank account associated with the fake MSAs.

Meliga's involvement in this case began no later than February 28, 2019, when he opened a Citibank bank account in San Jose, California, using a false name and false identification information.  Several months later, on July 1, 2019, perpetrators of the Intuit fraud scheme created a fraudulent MSA for a nonexistent company called "Was Towing to U."  The next day, July 2, the MSA for Was Towing to U charged five credit cards a total of $22,700.  The individuals holding the credit cards never used Was Towing to U and never authorized the transactions.  One day later, on July 3, Intuit deposited $22,700 into the Citibank account Meliga had opened under a false name.  Meliga immediately began withdrawing the proceeds of the fraud.  On July 3, 5, and 6, Meliga made eight separate withdrawals

from Citibank branches in San Jose, Hayward, and Oakland. Each individual withdrawal was less than $10,000, and therefore did not trigger financial reporting requirements. In addition, Meliga utilized another individual to help set up bank accounts used to hold the proceeds of the fraud scheme. On July 6, Meliga met with a co-conspirator and handed him $19,000 in fraud proceeds; Meliga kept approximately $3,700 in fraud proceeds for himself. Meliga knew that this money came from criminal activity and he set up the bank account under false pretenses knowing that it would be used to conduct financial transactions with criminal proceeds and knowing that his financial transactions were designed to conceal the fact that the money subject to his financial transactions were criminal proceeds. The government seeks restitution of $22,700 from Meliga for Intuit.

### 2. *EIDL Fraud and False Statements to the SBA*

The COVID-19 Economic Injury Disaster Loan ("EIDL") is a federal small business loan program designed to support small businesses' recovery from the economic impacts of COVID-19. Qualifying businesses receive an EIDL after submitting an application with information about the number of employees, gross revenue for the 12 months preceding COVID-19, and the cost of goods sold for the 12 months preceding COVID-19. The applicant must certify that all the information provided in the application was true and correct. EIDL funds are authorized to pay for payroll, sick leave, production costs, and business obligations such as rent, mortgage payments, and other debts.

On July 7, 2020, Meliga submitted an application to the SBA for an EIDL for a business named "Jamjed." Meliga's application requested that the loan proceeds be directly deposited into his Bank of America bank account ending in -4698. Meliga certified that the application was "true and correct" and that he understood that the application was submitted under penalty of perjury. Meliga made numerous false statements in his application, including that: (1) he was born in California and was a U.S. Citizen; (2) he had not been convicted of, pled guilty to, or pled nolo contendere to a felony offense in the last five years; (3) JAMJED had 32 employees; (4) JAMJED had gross revenues for 2020 of $2.8 million; (5) JAMJED had a cost of goods sold of $1.78 million; and (6) JAMJED had $974,000 in lost rents. All of those statements in Meliga's application to the SBA were false.

As a result of the false statements on Meliga's application to the SBA, on July 27, 2020, the SBA wired approximately $149,900 into Meliga's Bank of America bank account ending in -4698 as part of the federal government's EIDL program.  Meliga subsequently wired a substantial portion of the proceeds of that loan to a family member in Nigeria.  Meliga spent the remainder.  The government seeks restitution of $149,900 from Meliga for the SBA and U.S. taxpayers.

**II.     Guidelines Calculations**

The government has no objection to the Probation Office's Guidelines' calculations.  PSR ¶¶ 56-65.  The Total Offense Level here is 17.  The government has no objection to the Probation Office's criminal history calculation.  Meliga's Criminal History Category is III.  This establishes an applicable Guidelines range of 30-37 months.

**III.    Sentencing Recommendation and Motion for Downward Departure**

The United States moves for a downward departure under the Guidelines and recommends a total sentence of 12 months and 1 day imprisonment, to be followed by a three-year term of supervised release.  The government recommends a sentence of imprisonment in large part because of Meliga's criminal history.  He has two prior felony convictions.  His criminal conduct in this case occurred relatively soon after his prior criminal conduct underlying the two prior felony convictions.  Accordingly, Meliga's prior convictions and sentences did not deter him from committing the crime in this case.  Further, Meliga has continued to cause economic harm to the community for several years.  His sentence should reflect the continued nature of his criminal activity.  The government's recommended sentence would be the longest term of imprisonment imposed on Meliga to date.

Despite Meliga's conduct, the government believes that Meliga deserves a below-Guidelines sentence and that the Court should sentence him to 12 months and 1 day in prison.  The United States believes this sentence is warranted in consideration of Meliga's personal background and characteristics, including his witnessing the robbery and murder of his brother in Nigeria and his excellent record while on pretrial release.  This sentence is also warranted for the reasons set forth in the United States' separate, contemporaneous filing.

**IV.    Conclusion**

For the reasons set forth above, the United States recommends that the Court sentence defendant Ayegba Meliga to 12 months and one day in prison; three years of supervised release; restitution of $172,600; a forfeiture money judgment of $172,600; and a $200 special assessment.

DATED:  April 26, 2023                                          Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney


_____/s/_____
CHRISTIAAN H. HIGHSMITH
Assistant United States Attorney

USA'S MEM. IN FURTHER SUPPORT
OF MTN. FOR DOWNWARD DEPARTURE
[UNDER SEAL]
21-CR-395 MMC